Welcome to the Ninth Circuit, pleased to be here with my colleagues Judge Tallman and Judge Forrest. We'd like to welcome counsel. I think we've got everybody in person today. This is a good day, so welcome to the courtroom. We'd ask that during arguments you just pay attention to the time. Let us know if you want to reserve time and then start summing up before time's expired. We'll proceed with the argument calendar. Three cases have been submitted, Molina Ochoa v. Garland, case number 18-73420, Diego Conogue v. Garland, case number 20-71631 in Snow v. Pocatello Hospital, number 21-35845. First case set for argument is Malone v. Sziebert, if I have that right, and we'll invite counsel up. Good morning, may it please the court. I'm Allison Kaditz, pro bono counsel for appellant Calvin Malone. I'd like to reserve two minutes for rebuttal. In 2018, this court held that Dr. Leslie Sziebert hadn't met his summary judgment burden and that the district court had erred in concluding otherwise. The narrow issue presented in this appeal is whether Dr. Sziebert met his summary judgment burden based on the additional evidence that he submitted on remand. Dr. Sziebert added several sentences to his declaration, but none of those statements address his ultimate responsibility for ensuring that patients received medical care consistent with the 14th Amendment. So would you concede that he did not have responsibility for scheduling the transportation of your client to the mainland? No, Your Honor. Our position is that he did have responsibility for scheduling. Through vicarious liability as the chief medical officer? What was his personal involvement? Just to take a step back, it's true that you can't establish liability based on vicarious liability alone, but you can establish liability based on personal involvement or a causal connection, a sufficient causal connection between the supervisor's action or inaction and the constitutional harm. So here we're focused on inaction and the causal connection between. His testimony was that his responsibility as the medical director was to approve the off-island transport from McNeil, right? And I think you want us to expand that responsibility to include an obligation to follow up to make sure that the transportation was actually effectuated. Is that your theory? Our theory is that there's enough evidence here from which a reasonable jury could conclude that he had responsibility to ensure that a reasonable jury could conclude that he callously disregarded Mr. Malone's 14th Amendment right to receive adequate medical care. And we know that that a jury could make that conclusion based on the state issued position description, which Dr. Siebert signed and attested was accurate and indicated that he had direct medical oversight over clinic operations. He was directly accountable for processes and outcomes related to clinic operations. And he had final medical authorizing authority for medical trips to see off-island. He testified that he exercised that authority and approved the trip. And I believe he also testified that there was a separate contractor to the state that actually handled the scheduling of the inmate patients for off-island medical consultants. Do I understand the record correctly? So the position description indicates that he had supervisory authority over all medical staff, including the staff that was contracted through the facility. Did he set in motion a sequence of events that led to the constitutional violation? And I'm having a hard time understanding at what point he was responsible for the fact that once he had approved the transport, the security officials, I assume for staffing reasons, weren't able to accommodate as many inmates who needed to the ferry ride to the mainland. So a couple points. I think we need to look at what the evidence of his knowledge was. We know that he knew that Mr. Malone tore his Achilles tendon. It was a serious, painful injury that required treatment within about a week. There's evidence that he knew that the initial appointment had been canceled. There's a dispute of fact as to whether he knew that that appointment was canceled. Even if that's true, even if he had that knowledge, what could he have done? His declaration, one of the two paragraphs he added says, in my position as medical director, I was not responsible for setting limits on the number of off-island medical trips that could be made per day. My understanding is that the limits for off-island transport were set by SCC security management based upon staffing levels. So what evidence do you have? Before our court, we said there was a genuine issue of dispute of fact. What evidence do you have in the record that disputes paragraph 6 of this affidavit that shows that there's a dispute of fact whether he set the limits? Because that seems to be the problem here, was the limits that were set. Your Honor, paragraph 6 isn't material to the issue here. Everyone agrees that there were these limits on security, that there were only two trips going out each day. The problem is that Mr. Malone wasn't, he didn't get one of those spots. And notably, Dr. Ziebert didn't introduce any evidence into the record that there was any sort of triage going on here, that there were patients with more serious medical conditions that would have taken priority over Mr. Malone. The record shows that Dr. Ziebert knew about this injury, that he knew it required treatment within a week. He knew that there had been a cancellation within that week. He also admitted that there had been- Do we know when he learned that? I read the record and it was unclear as to when he had that knowledge. Knowledge of- Of the fact that he had missed his first appointment because of the security concern. That's a point that the prior panel relied on as evidence that there was a dispute of fact here. A jury could conclude that based on his testimony that he was aware at or around June- So is your position that the law of the case doctrine applies so we can't revisit that? That that would be beyond the scope of the remand mandate? Yes. Okay. So paragraph six isn't material. It was- So your point is even if that would- I mean, it sounds like it is material for the first reason why he missed it. Because it sounds like he did miss it because they didn't have a spot to go. But you're saying they could have shoehorned him in. There's no evidence that he shouldn't have been on the boat that day, that there were more serious- The limit that was why he wasn't on, though, was because of these limits. I mean, at least for the initial appointment. We know that there was a limit for two people per day. And we know that someone had to decide at this clinic who got those two spots. And a jury could conclude based on the position description that that would be the only doctor on this island who had final medical authorizing authority. Where is that in the record? I didn't read that there was somebody at the clinic who was responsible for choosing which inmate went. My understanding was they authorized the off-island trips, but then it was up to another contractor. I don't know if it was the security management at the institution or somebody else who was responsible for scheduling the appointments and seeing to it that the inmate actually got on the ferry. There had to be a doctor on the island who decided who- There are two trips. Someone has to decide whose medical issue takes priority on a given day. I didn't see any testimony in the record as to who made that decision. Dr. Ziebert says it wasn't his. His role was limited to- and I assume it's a fiscal issue. Is this a serious enough injury that he needs a consult from somebody we don't have in-house? Clearly he needed it, but the question is we can only escort so many inmates per day because I assume they have to have at least two- I don't know if they call them correctional officers or attendants, but these people have to be escorted by custodians to their appointment. That really is more a cost and a staffing issue than it is triaging who's the most significantly injured inmate in need of more urgent care. I'd point the court to the position description, which says that Dr. Ziebert had final medical authorizing authority for medical trips to see community providers and that he decided when. But that doesn't say that he triaged the patients and decided, okay, you've got a heart murmur, you've got an ankle Achilles issue, you've got a breathing problem, so you two get to go, but you're going to have to wait. He didn't testify that that's what he did, and I don't read that in the position description. Dr. Ziebert was the only doctor on this island. He was accountable for ensuring that patients received- Well, he's a psychiatrist, right? He's there because these people need serious psychiatric help. He's a psychiatrist and the only doctor on the island. He was responsible for supervising all of the nurses, and he testified that he wasn't responsible for supervising those people, but a jury could conclude based on the objective position description over his self-serving testimony at his deposition that that was his job. These people, these residents, including Mr. Malone, they need medical care, and he's the only doctor on this island, and he abdicated his responsibility here. He knew that Mr. Malone needed surgery. He tore his Achilles tendon, which no one disputes is a serious painful injury that requires treatment quickly, and he just stuck his head in the sand. Mr. Malone slipped through the cracks, and as the medical director and the only doctor at this facility, it was his responsibility to make sure that Mr. Malone got a spot on the boat. Over two months passed before he got any treatment here. Okay, your time's up. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. Heidi Holland on behalf of Dr. Leslie Ziebert. I would agree with counsel the case before this court is a very narrow one, a 1983 claim against Dr. Ziebert based on 14th Amendment allegations of inadequate medical care. Summary judgment should be affirmed on any of three independent reasons.  First, Mr. Malone has failed to rebut the presumption under Youngberg that the care provided to him and the medical decisions that were made followed accepted medical standards. Now, the district court didn't reach that issue, though, right? The district court, so the judge accepted the report and recommendation. The R&Rs went straight to the second prong of a 1983 claim to determine that there was no proximate cause established and so specifically did not make a finding one way or other. Well, I guess that begs the question why we should reach out. I mean, generally, we would remand that to the district court. You know, maybe the argument is this has already been down twice. It's time for us to take the bull by the horns. And, Your Honor, with all due respect, when the court declines to address this type of issues, it's because the record has not been sufficiently developed. And it definitely has been here. Well, is that right? Because, I mean, to follow up on the point from your opponent, somebody has to choose who gets the two trips. And on this record, I don't think we know who that is. It doesn't make any sense to me that it's not a medical person. But the reality is the record doesn't tell us who gets to choose which patients go each day. So whose job is it to tell us that? Because that's a key factor here because if the person who has stubbed their toe is getting the trip and not the person who's got a breathing problem, I think, was an example that was given, then we've got a problem. We do, Your Honor. However, I would point to under Youngberg that that burden is on Mr. Malone to overcome that presumption, that the medical decisions, which would include triaging, were not proper, and he did not provide that evidence. And the burden is on him to do that. I mean, I get that he has the burden at trial, but you're here asking for summary judgment and saying that there's no set of facts that he could prove that would let him prevail on a claim. So don't you have some obligation there? I mean, somebody has to make that choice. What we know in the record is that he had an injury. Nobody disputes that. It needs treatment. Clearly, Dr. Siebert thought so too because he authorized this trip and then nothing for two months. So, Your Honor, for a 1983 liability to stand against Dr. Siebert, he has to be personally involved in the deprivation. And so that deprivation here is the delay, and getting back to the district court's decision, is there was nothing to tie Dr. So because there is not respondeat superior liability, there has to be some sort of personal involvement by the 1983 defendant. In this case. Or, counsel, or he has to set in motion a series of acts. Correct. And I think that's where Ms. Kaditz was focusing on. So to address the court's concern in that regard, there is no evidence that he set in motion any acts. He did not establish. There is no evidence that there were policies or allegations that there were policies that contributed to the delay that were the responsibility of Dr. Siebert. There is. So here's the concern I have. We're not deciding this in a vacuum. Correct. How much are our hands tied by law of the case here? Because I read our prior mem dispo and it decided an issue. It's not entirely clear to me if it foreclosed. I mean, one reading of our prior decision is it basically forecloses the argument you're making here. That at least on this issue, there was already a material dispute of fact because of the policy manual. Is that, do you disagree with that reading of our prior decision? And if so, why? So are you referring, Your Honor, to the. The Ninth Circuit. Correct. But which portion are you referring to? So we remanded and said there was a material dispute of fact about whether he was involved. Correct. Based on the policy directive. Right. On the policy directive. Or maybe I'm misusing. I'm sorry. I don't have it in front of me. The general policy that. Right in there. Yeah. Well, there's just the general policy. That's what their whole point is based on. Is that he, oh, sorry, the position description. Okay. Yeah, that's what I, I'm going to back myself into it there one way or the other. So the position description, that's what we held was created a material dispute of fact. So my reading, and certainly that's just my reading of it, was this idea that the position description charged him with overall running of the clinic. And there's no question about that. He is responsible for overall running of the clinic. The overall running of the clinic is not, however, what caused the alleged constitutional deprivation. I mean, the evidence is that this doctor identified that he needed treatment. Yes. Authorized the trip so that he could get the treatment. Correct. And then as far as we can tell, nothing, no follow-up, nobody's paying attention. Security is rescheduling it for their reasons, but we don't know, like, that there's any sort of medical judgment being exercised as those decisions are being made. And something has to be, there has to be a decision-making process going on, and it's totally silent. And so I keep coming back to, how is it that you have shown that there's no set of facts here that can go forward? I'm sorry, Your Honor, I didn't interrupt. So if I can correct one part of the record that I think is important for the question that the court is asking here, is, like, what was his knowledge, and why didn't he follow up? So I'm guessing that's kind of where the court is struggling. So it's our position that Dr. Ziebert had no contemporaneous knowledge of any of the problems that were going on. So to give some context, those two. But where do you get that? Because his declaration doesn't say that. All his declaration says is, I wasn't involved in the offshore scheduling. So in Paragraph 3 of his declaration, he says, I'm familiar with his care from a later review of the records. So he learned after the fact what the problems were. However, the court doesn't even have to believe me on that, if you're still not convinced about that, because the record is unequivocal that he did not know about any of the things after those two security cancellations. And so, again, I would ‑‑ So the state of those facts was the same now and when we first made the decision in this case, the other panel in 2018, right? Like, the state of those facts that you're referencing hasn't changed. So that is correct. Because what the court was relying on, although I wasn't there, so I don't know how much information was provided to the court, but what the court ‑‑ My concern, I think, is the same one, is that previously we said there was a material dispute of fact on this very issue because of the position description. That may have been right. That may have been wrong. I think if I had been deciding in the first instance, I might have decided it differently. So my question is, to what degree are we bound by our prior panel's decision? I mean, what is different about it now than the court? What's different about it now is Dr. Siebert has addressed the issues that the court was concerned about in his declaration, and he has said that he was not responsible for scheduling and he was not responsible for off‑island, the limitations placed on off‑island transportation. Mr. Malone, in response to that declaration, offered no evidence to the contrary. Except the position description, which was good enough before. So the position description, so the court's concern before was whose responsibility is it? And he clarified those issues, and Mr. Malone offered nothing to rebut the scheduling issue or the issue related to ‑‑ Your position is that our prior panel still left this question open. We didn't say there's a genuine. I'm just not sure I agree with that reading. I think that's what we have to get to the bottom of. Because it's unclear to me why we would have remanded it previously if we didn't think that there was a dispute of fact on this question. And if there was a dispute of fact, you can't vacate a disputed fact by just putting in more evidence. Like, it was already disputed before. Well, is that right? Or could you establish additional evidence, which then would switch the burden to Mr. Malone to contest the new evidence and show that there's still a contested issue of fact? Yes, and that's what I'm arguing, because the point of a trial would be to take in additional evidence, and Dr. Siebert did that via declaration, to which there was nothing offered to counter that information. And we don't have Mr. Malone doesn't have an expert witness to establish from a medical standpoint. Correct. That there was medical negligence here in the manner in which he was referred to the orthopedic surgeon. Correct. And I see I'm out of time. May I respond to just that? So the question about a medical expert in this particular case is important, because the standard is whether you deviated from accepted or substantially departed from accepted medical standards. And we don't know what those are. Mr. Malone has argued that Dr. Siebert's own testimony establishes that. And that is not true, because while he talked about what would be optimal, he never once said that there was a deviation from the standard of care. But, again, the district court didn't address that. So you'd be asking us to decide that in the first instance. We would ask that that be one of any of three reasons that this court could affirm summary judgment. If I can, I want to ask one more question. So the additional facts that were put into the record by your client are, I didn't set this two-person or this two-trip-a-day limit, and I didn't schedule who was going to get the trips. What I'm struggling with is it seems to be that the inference you want us to take from that is a doctor can decide that a trip is needed, authorize the trip, and then wash their hands of it, because it's not his problem to figure out when that trip is actually going to occur, and there's no medical judgment to bear to that issue. That seems to be the argument that you're making, and it seems to be the only argument that would work in terms of saying that there's no dispute of fact. So, Your Honor, in response to your question, I think it would be entirely different if he had reason to suspect there were problems. In this court's jurisprudence, there are lots of cases where the administrator is put on notice. So then we get back to this problem of our prior decision, because I'll quote this. Quote, further, the doctor testified during his deposition that he was aware that Maloney had an outpatient appointment that was not carried out because of a stricture that security placed on this two-trip thing, and then said because of that, it goes on to say, and he admits that there are occasions when health and safety of residents is compromised because of delay related to these trips. And then we say that's a question of fact. I know I'm over my time. May I respond? Yeah, absolutely. So, first as to the location, Dr. Ziebert cannot be held personally liable for a decision of the legislature to place this facility on McNeil Island. So that's way beyond his control. The off-island transports is also beyond his control. And, Your Honor, if I would point the court to, again, this is from his deposition at ER 148, and this is, so if the court believes that he did know about the two cancellations related to security, he says, I was assured that you were going to get an elected outpatient appointment without going to the emergency department. And right before that, he says, and this is at ER 146, I wasn't aware that you were scheduled. Had I known your court dates, so at the time you were injured, and this is important, at the time you were injured, I was not aware that you were going to go to trial. So he did not have knowledge, which would have been different. I'm not sure what, I mean, we're going way over. I'm not sure what that means because the injury was June 5th or something, and the trial date was July 15th, so we're already six weeks later. So that delay, however, was the cause by the orthopedist as far as his availability. Again, that has nothing to do with something that Dr. Ziebert can control. And if there had been anything in the evidence to indicate that this was like a pattern or there were these policies that were creating issues, and the court has lots of jurisprudence where there's something that an administrator should have known that this was a continuing, ongoing pattern, and there's nothing to indicate that. I'm way over. I apologize. Thank you. I think we have your argument. A few quick points, Your Honors. I'd like to return to this notion that it's a very narrow question before the court, and I'd like to look back at the declaration that Dr. Ziebert submitted on remand. We talked about Paragraph 6. I'd like to point to Paragraph 7. Dr. Ziebert wrote, I was not involved in scheduling off-island medical visits for Mr. Malone. He didn't even write that he wasn't responsible for scheduling these appointments. He wrote and he admitted that he didn't do anything here. He wasn't involved in the scheduling for Mr. Malone. There's no evidence that was submitted on remand that changes the decision by this panel in 2018. I'd like to— Well, it did answer one question clearly, which is that he wasn't responsible for scheduling, right? You'd agree to that? No, Your Honor, I disagree with that. And then you're back to the position description? Back to the position description and back to this declaration, which doesn't say that. It says that there are two limits. It doesn't say that he wasn't responsible. No, I was asking about Paragraph 7. I was not involved in the scheduling of off-island visits for Mr. Malone. The scheduling of his visits was handled by primary care providers contracted to SCC and SCC medical staff. He was responsible for supervising those individuals. And this does not say— That's vicarious liability, isn't it, counsel? But that's not all we have that he was responsible for supervising.  At some point. That's just a jury question, though, Your Honor. It's not clear to me that he knew contemporaneously based on my reading. It's a jury question. Well, but—and I'm sorry to keep going back to the prior decision. I can't make heads or tails out of what we did in this prior decision. I mean, in your opinion, did we leave any question on this open? Because we said it is not clear from the record whether Defendant Siebert is responsible for scheduling patients. On this record, he hasn't met his burden. There's some suggestion that he could have done something on remand. So it seems like previously we didn't hold that as a—if we're going to interpret the law of the case, we didn't say there's a genuine dispute of material fact on this question and nothing can change that. We sort of suggested that something could change it. Would you agree with that, or do you think that we resolved this issue once and for all previously? I think the issue was resolved, but in either situation, Dr. Siebert— He hasn't done it with these two extra paragraphs. He didn't carry his burden on remand. He didn't establish that there was no genuine dispute of fact. Would you think the outcome would be different if his declaration said, I wasn't involved, it was these contractors that did the scheduling, and I have no supervisory authority over it? I still think—that's not what it says, as you point out, but I think there would still be a dispute of fact here in light of the position description and in light of his numerous admissions during his deposition. Okay. Thank you, counsel. Thank you, both counsel, for a narrow but interesting issue. And thank you for taking the case pro bono. Very much. We very much appreciate your—very well prepared, and you represented your client very well, so thank you. Both of you did. I will move on to this.
judges: TALLMAN, NELSON, FORREST